## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SELLERS INGRAM, III,** | **Case No. 17–cv–10740–ESK** |
| **Petitioner,** | |
| v. | **OPINION** |
| **THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY,** | |
| **Respondent.** | |

**KIEL, U.S.D.J.**

**THIS MATTER** comes before the Court on petitioner Sellers Ingram, III's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Petition). (ECF No. 1). Respondent Attorney General of New Jersey opposes the Petition. (ECF No. 11.) For the following reasons, I will dismiss in part and deny in part the Petition. No certificate of appealability shall issue.

### I.    FACTS AND PROCEDURAL HISTORY

I adopt the facts as set forth in the opinion of the New Jersey Superior Court Appellate Division (Appellate Division) denying petitioner's direct appeal.

> On the evening of December 7, 2009, defendant and several other people, including the victim, Jamal Smith, attended a party at an apartment in Pleasantville. Everyone was talking loudly and drinking or smoking marijuana. During the party, Smith and another guest engaged in a freestyle rap competition that became increasingly confrontational and led to loud arguing. The partygoers spilled into the "breezeway" outside the apartment, where defendant and Smith began arguing. As their argument escalated, Smith challenged defendant to a fight and antagonized defendant by threatening him verbally and making derogatory

references to defendant's age.[1]   Defendant responded by shooting and killing Smith.  After the shooting, defendant fled the scene, leaving behind his hooded sweatshirt and cell phone.  The police found a nine millimeter shell casing at the scene, and the medical examiner later recovered a .38 caliber bullet from Smith's body.

Several eyewitnesses placed defendant at the scene, confirmed he had brandished a gun and argued with Smith, gave a description of him, and identified him as the shooter.  When the police arrested defendant on December 10, 2009, he had a nine millimeter Glock 23 handgun in his possession, which he claimed he purchased two days after the shooting.  The gun's owner testified at trial that he did not know defendant, did not give defendant permission to use or possess his gun, and the gun was stolen from his apartment on November 21, 2009.  The State's expert opined at trial that the shell casing found at the scene was ejected from that gun, and although the forensic testing was inconclusive, the gun could have fired the bullet found in Smith's body.

During an approximately three-hour video-recorded interview,[2] which was played to the jury, defendant admitted he was at the party and argued with Smith, but adamantly denied he shot Smith.  He insisted that he fled the scene before the shooting after he saw an individual approaching with a shotgun.  Despite the various interrogation tactics the interviewing detectives used to extract a confession, defendant steadfastly maintained his innocence throughout the interview and made no inculpatory statements.

---

[1] "Defendant was thirty-eight years old and Smith was nineteen years old." *State v. Ingram*, No. A–0626–11T3, 2013 WL 6283644, at *1 n. 2 (N.J. Super. Ct. App. Div. Dec. 5, 2013)

[2] "Defendant's interview was actually five hours long.  The jury saw a redacted version."  *Id.* at *2 n. 3.

> Defense counsel consented to playing defendant's video-recorded interview to the jury and to admit the recording into evidence. Defense counsel mentioned the video-recording during his summation, and did not object when the prosecutor played certain portions during his summation. Defense counsel also consented to permitting the jury to have unfettered access to the video-recording in the jury room during deliberations.

*State v. Ingram*, No. A–0626–11T3, 2013 WL 6283644, at *1–2 (N.J. Super. Ct. App. Div. Dec. 5, 2013) (*Ingram I*). The jury found petitioner guilty of first-degree aggravated manslaughter, N.J.S.A. 2C:11–4(a), as a lesser-included offense of first-degree murder (count one); two counts of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39–5(b) (counts two and five); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39–4(a) (count three); and third-degree receiving stolen property, N.J.S.A. 2C:20–7 (count seven). *Id.* at *1. The trial court found petitioner guilty of two counts of second-degree certain persons not to have weapons, N.J.S.A. 2C:39–7 (counts four and six), in a separate trial. *Id.* Petitioner received a 58-year term of imprisonment with a 47.5-year period of parole disqualification. *Id.*

Petitioner filed an appeal with the Appellate Division. *Id.* On December 5, 2013, the Appellate Division affirmed petitioner's convictions and sentence but remanded for an amendment of the judgment of conviction "to merge count two with count five and count four with count six, and to reflect that the sentence imposed on count six, not count four, is consecutive to the sentence imposed on count one." *Id.* at *70. An amended judgment of conviction was issued on December 11, 2013. (ECF No. 11–6.) The New Jersey Supreme Court denied certification on July 10, 2014. *State v. Ingram*, 218 N.J. 276 (2014).

Petitioner filed a *pro se* petition for post-conviction relief (PCR) on August 13, 2014. (ECF No. 11–17 p. 115). The PCR court conducted oral argument

3

on March 27, 2015.  (ECF No. 11–49.)  On April 2, 2015, the PCR court denied the petition without an evidentiary hearing.  (ECF No. 11–17 p. 159.)  The Appellate Division affirmed the PCR court on November 7, 2016.  The court rejected petitioner's appeal on June 30, 2021.  *State v. Ingram*, No. A–4507–14T1, 2016 WL 6575220, at *4 (N.J. Super. Ct. App. Div. Nov. 7, 2016) (*Ingram II*).  The New Jersey Supreme Court denied certification on February 13, 2017.  *State v. Ingram*, 229 N.J. 149 (2017).

This Petition was filed on November 2, 2017.  (ECF No. 1).  Petitioner requested to stay the federal proceedings as he was currently pursuing a second PCR petition in the state courts.  (ECF No. 1–2.)  District Judge Noel L. Hillman granted the stay on March 16, 2018.  (ECF No. 7.)  On February 12, 2018, petitioner's second PCR petition was denied.  (ECF No. 11–29 p. 1.)  On February 14, 2019, the Appellate Division found that the second PCR was time-barred.  (*Id.* pp. 3, 4.)  On July 9, 2019, the Supreme Court of New Jersey denied petitioner's petition for certification.  (ECF No. 11–35.)  Petitioner moved to reopen his habeas proceedings, which Judge Hillman did on November 24, 2020.  (ECF No. 9.)  Respondent filed an answer on March 9, 2021.  (ECF No. 11.)  Petitioner did not file any reply.  The matter was reassigned to me on March 25, 2024.  (ECF No. 12.)

## II.   LEGAL STANDARD

"The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases."  *Shoop v. Hill*, 586 U.S. 45, 48 (2019).  A federal court may entertain a petition for writ of habeas corpus on behalf of a person in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

4

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). "[A] state-court decision is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014). "This means that a state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Shoop*, 586 U.S. at 48 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). I must presume that the state court's factual findings are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or

influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See Brown v. Davenport*, 596 U.S. 118, 134 (2022) ("[E]ven a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief.").

## III.  DISCUSSION

### A.  Allowing Jury to View Petitioner's Interview with Police

In Ground One, petitioner argues that it was structural error to allow the jury to have "unfettered access to a videotaped statement in the jury room." (ECF No. 1 p. 26.)  He asserts that the jury heard prejudicial statements about his prior bad acts and incarceration.[3]  (*Id.* p. 28.)

The Appellate Division rejected petitioner's structural error argument on direct appeal and found that any trial error had been invited by trial counsel. *Ingram I*, 2013 WL 6283644, at *3–4.  "Defense counsel considered defendant's video-recorded statement as a crucial element of the defense strategy that defendant did not shoot Smith and had left the scene before the shooting occurred.  Defendant never wavered from his version of events during his lengthy video-taped interview, and always maintained his innocence."  *Id.* at *4.  "We conclude that defendant invited the error, and the overwhelming evidence of his guilt, as well as the nature of the invited error, require us to affirm his convictions."  *Id.*

Petitioner asserts that it was structural error when the court denied him his right to be present at a critical stage of trial, *i.e.*, during a readback of

_____

[3] I note that neither party submitted the recording with their papers.  A redacted transcript was included as part of respondent's PCR appellate appendix, (ECF No 11–18 p. 40), but respondent indicates that transcript was "not marked as the version provided for the jurors' convenience and no transcript was admitted into evidence."  (ECF No. 11 p. 25 n. 6.)  As it is not evident that the submitted transcript was the version provided to the jury, I will not consider it for purposes of this claim.

testimony to a deliberating jury. (ECF No. 1 p. 26.) "Certain types of constitutional error are considered structural, and subject to automatic reversal, not only because they have the potential to infect the entire trial process, but because of the difficulty of assessing the effect of the errors." *Palmer v. Hendricks*, 592 F.3d 386, 397 (3d Cir. 2010) (cleaned up). "The list of errors that constitute structural defects is very limited, and includes complete denial of counsel, biased judges, racial discrimination in selection of grand jury, denial of self-representation at trial, denial of public trial, and a seriously defective reasonable doubt instruction." *Id.* (cleaned up). The Appellate Division rejected petitioner's structural error claim on the merits. *Ingram I*, 2013 WL 6283644, at *4.

This claim lacks merit to the extent it relies on New Jersey law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Even if allowing the recording into the jury room was improper under New Jersey law, "'federal habeas corpus relief does not lie for errors of state law.'" *Id.* at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1984)).

The Appellate Division concluded that petitioner had invited any error in allowing the jury to view the recording, precluding me from further reviewing the claim. The invited error "doctrine prevents a habeas petitioner from raising a claim challenging an action of the trial court which was invited or induced by that petitioner or by that petitioner's attorney." *Blank v. D'Ilio*, No. 15–cv–03596, 2018 WL 1919826, at *9 (D.N.J. Apr. 24, 2018), *aff'd sub nom. Blank v. Adm'r New Jersey State Prison*, 851 F. App'x 287 (3d Cir. 2021). This doctrine provides an independent basis for me to reject the habeas claim. *See, e.g., Druery v. Thaler*, 647 F.3d 535, 545 (5th Cir. 2011) (collecting cases); *Fields*

7

*v. Bagley*, 275 F.3d 478, 486 (6th Cir. 2001) ("When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error."); *Parker v. Champion*, 148 F.3d 1219, 1221–22 (10th Cir. 1998) (noting that habeas relief on the basis of an invited error is precluded); *Wilson v. Lindler*, 8 F.3d 173, 175 (4th Cir. 1993) (per curiam) ("Even if we were to find such error in the trial of this case in the state court, the error was invited and therefore cannot form the basis for habeas corpus relief."). "As [p]etitioner, through counsel, consented to and approved of the course of action taken … he cannot cry foul as to the action in question." *Reddick v. Warren*, No. 12–cv–07875, 2016 WL 29261, at *12 n. 3 (D.N.J. Jan. 4, 2016).

Petitioner would not be entitled to habeas relief on Ground One even if it were not barred under the invited error doctrine. Trial courts have "considerable discretion in the handling of exhibits during the course of the trial as well as during jury deliberations." *United States v. Burrell*, 963 F.2d 976, 982 (7th Cir. 1992); *accord Blank*, 851 F. App'x at 289. Petitioner cites no Supreme Court authority addressing a jury's access to admitted evidence, nor does he demonstrate that the alleged error qualifies as a structural defect under the narrow circumstances recognized by the Court. In the absence of Supreme Court precedent on this issue, I cannot conclude that the Appellate Division's decision was contrary to, or an unreasonable application of, clearly established federal law. Therefore, I will deny habeas relief on Ground One.

### B.  **Autopsy Photographs and Clothing**

In Ground Two, petitioner argues that the State's use of autopsy photographs and bloody clothing during trial was unduly prejudicial and deprived petitioner of his right to a fair trial. (ECF No. 1 p. 29.)[4] The

---

[4] Neither party provided the photographs in their papers. According to respondent, "[t]he first photograph … depicted the victim's body and showed the entrance wound at his right shoulder. S–89 and S–91 also depicted the gunshot wound at different angles. S–99 showed the bullet protruding from the victim's 'left

Appellate Division rejected this claim on direct appeal.  *Ingram I*, 2013 WL 6283644, at *4.  "Because the clothing remained in a sealed bag and the jury never saw it, there was no error.  As for the photographs, defense counsel agreed to the ones the prosecutor selected to show to the jury and did not object to their admission into evidence.   Trial errors that defense counsel acquiesced in or consented to are ordinarily not a basis for reversal."  *Id.* at *5.  "In any event, the photographs corroborated the medical examiner's testimony and conclusions that the gunshot wound to Smith's shoulder and the internal injuries caused by the bullet's trajectory caused Smith's death."  *Id.*  "This evidence supported the inference that defendant either purposely or knowingly caused Smith's death or serious bodily injury resulting in his death, and was necessary to prove first-degree murder."  *Id.*

As previously noted, petitioner's evidentiary claim lacks merit to the extent it relies on New Jersey evidence rules, *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991), but "the Due Process Clause forbids the introduction of evidence so unduly prejudicial as to render a criminal trial fundamentally unfair."  *Andrew v. White*, 145 S. Ct. 75, 83 (2025) (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)).   To prevail on a due process claim, petitioner "must prove that he was deprived of 'fundamental elements of fairness in [his] criminal trial.'"  *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (alteration in original) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992)).   Petitioner "must tread a steep hill.  The Supreme Court has 'defined the category of infractions that violate "fundamental fairness" very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of

---

flank' area, where it was lodged.   S–94 illustrated 'the blood in the pericardial sack' around the heart.   S–96 and S–95 showed 'the elongated cut of the heart caused by the bullet going through that part of the heart.'   S–97 depicted the 'upper lung lobe with a round bullet hole.'   Finally, S–98 and S–93 depicted the injuries to the victim's liver."   (ECF No. 11 p. 34.)

Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California,* 505 U.S. 437, 443 (1992)).

The Appellate Division reasonably concluded that the photographs were relevant to Smith's cause of death. "Homicide trials are naturally unpleasant, but photographs of the victim's body can be evidence of a defendant's intent." *Peoples v. DelBaso*, No. 17–cv–04444, 2021 WL 5748942, at *26 (E.D. Pa. Aug. 24, 2021) (internal citation omitted), *report and recommendation adopted,* No. 2:17–cv–04444, 2021 WL 5711303 (E.D. Pa. Dec. 2, 2021). "[T]he condition of the victim's body provides evidence of the assailant's intent, and even where a medical examiner's testimony can describe the body's condition, such testimony does not render the photographs inadmissible." *Id.* (internal citation omitted); *see also Breece v. Hendricks*, No. 02–cv–05547, 2005 WL 2897489, at *6 (D.N.J. Oct. 28, 2005) ("Admission of [autopsy photos depicting the head of the victim] did not deprive Petitioner of a fundamentally fair trial.") Trial counsel reviewed the autopsy photographs prior to their admission and excluded photographs that were "unnecessarily gruesome." (ECF No. 11–41 p. 3.) Trial counsel further noted that he had "no objection" to the agreed upon photographs, remarking that, "as to their gruesomeness and their duplicity, it's not anything different than, quite frankly, that is going to be testified to … ." (*Id.* p. 4) Smith's clothing was never shown to the jury, so the Appellate Division reasonably concluded that its admission was not unduly prejudicial.

Petitioner bears the burden of "showing under § 2254(a) that he is being held in custody in violation of the Constitution, laws, or treaties of the United States." *Mitchell v. Superintendent Dallas SCI*, 902 F.3d 156, 163 (3d Cir. 2018). He has not satisfied that burden here. I find that the Appellate Division reasonably concluded that the admission of the photographs and clothing was not "unduly prejudicial" and did not render petitioner's trial "fundamentally unfair." Petitioner is not entitled to relief on this claim.

C.    **Sentencing**

In Ground Three, petitioner asserts that the trial court's sentence violated double jeopardy principles and improperly imposed consecutive prison terms. (ECF No. 1 p. 31.)

"Sentencing is a matter of state criminal procedure and it does not involve such a denial of fundamental fairness as to fall within the purview of federal habeas corpus." *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987). "So long as the type of punishment is not based upon any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern." *Id.* Petitioner invokes the Fifth Amendment's Double Jeopardy Clause, but his argument only contains state law arguments. (*See, e.g.,* ECF No. 1 p. 31 (citing *State v. Yarbough*, 100 N.J. 627 (N.J. 1985), *cert. denied*, 475 U.S. 1014 (1986); p. 33 (asserting that the trial court "applied guidelines by looking to the objective of our Code's murder and weapons-possession prohibitions.")) Accordingly, I find no merit in petitioner's Double Jeopardy argument. I will construe Ground Three as asserting a cruel and unusual punishment claim in the interest of justice and considering petitioner's *pro se* status.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted). "A court must consider three proportionality factors when evaluating Eighth Amendment challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions." *United States v. Burnett*, 773 F.3d 122, 136 (3d Cir. 2014) (citing *Solem v. Helm*, 463 U.S. 277, 290–92 (1983)). "In conducting this

11

analysis, a court grants substantial deference to legislative decisions regarding punishments for crimes." *Id.*

To the extent that petitioner asserts the trial court failed to merge the weapons-related offenses, this error was addressed and corrected on direct appeal. The Appellate Division noted that "the State concede[d] the judge should have merged count two with count five and count four with count six" and "that the judge should have imposed the sentence on count six, not count four, consecutive to count one." *Ingram I*, 2013 WL 6283644, at *6. Petitioner's judgment of conviction was amended to reflect this correction. (ECF No. 11–6.) Therefore, petitioner has already received relief on this argument.

I cannot review whether the trial court applied the *Yarbough* factors correctly in determining whether to impose a consecutive sentence, *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991), but I note for Eighth Amendment purposes that the *Yarbough* factors are an amalgamation of other jurisdictions' criteria for imposing consecutive or concurrent sentences. *See Yarbough*, 100 N.J. at 638–44.

Here, the Appellate Division concluded that consecutive sentences were warranted because

> [t]he certain persons not to have weapons offense in count six was clearly a distinct offense from Smith's shooting. The offense was committed on separate dates and in separate areas, and it had distinct elements. Imposing a concurrent sentence on defendant for this offense would have given him a "free crime" and would have frustrated the legislature's intent to deter persons with criminal histories from possessing weapons.
>
> The receiving stolen property offense was also a distinct offense that occurred before the aggravated manslaughter, since it occurred at a different location and against a different victim, the gun's owner.

12

*Ingram I*, 2013 WL 6283644, at *7.   This is a reasonable conclusion based on the state court record, and petitioner cites no federal case law to support his claim that his sentence is unconstitutional because the "possession of the weapon was [a] singular, ongoing offense which was terminated when he was dispossessed of the gun at the time of his arrest."   (ECF No. 1 p. 32.)

In conclusion, I find that the Appellate Division's decision is not unreasonable in light of the facts on the record below, nor is it contrary to or an unreasonable application of clearly established federal law.   Petitioner is not entitled to habeas relief on this claim.

### D.   **Sufficiency of the Evidence**

In Ground Four, petitioner asserts that the trial court erred when it did not vacate his aggravated manslaughter conviction "when the State failed to prove each essential element beyond a reasonable doubt."   (ECF No. 1 p. 35.) I interpret this as a sufficiency of the evidence claim.   The Appellate Division concluded this argument "lack[ed] sufficient merit to warrant discussion in a written opinion … ."   *Ingram I*, 2013 WL 6283644, at *7.

Petitioner did not exhaust this claim because he did not present it to the New Jersey Supreme Court.   (ECF No. 11 p. 44.)   A federal court may deny a habeas claim on the merits notwithstanding a petitioner's failure to exhaust state remedies or comply with procedural requirements.   *See Carrascosa v. McGuire*, 520 F.3d 249, 254–55 (3d Cir. 2008) ("Section 2254(b)(2) provides that '[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.'") (quoting 28 U.S.C. § 2254(b)(2)); *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("[B]ecause we will deny all ... claims on the merits, we need not address exhaustion."); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("[W]e may reject claims on the merits even though they were not

properly exhausted, and we take that approach here.")  I will exercise my discretion to conduct a *de novo* review and deny this claim on its merits.

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  "[E]vidence is sufficient to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (per curiam) (emphasis in original) (quoting *Jackson*, 443 U.S. at 319).  "[T]he prosecution need not affirmatively 'rule out every hypothesis except that of guilt … .'" *Wright v. West*, 505 U.S. 277, 296 (1992) (quoting *Jackson*, 443 U.S. at 326).

"The police found a nine millimeter shell casing at the scene, and the medical examiner later recovered a .38 caliber bullet from Smith's body." *Ingram I*, 2013 WL 6283644, at *1.  Petitioner had a stolen nine millimeter Glock 23 handgun in his possession when he was arrested.  *Id.* at *2.  "The .38-caliber class includes both nine-millimeter Luger and .380 automatic ammunition, and the two are easily confused because they have a 'similar size and construction.'"  (ECF No. 11 pp. 49, 50 (quoting ECF No. 11–41 pp. 124, 125.))  "The State's expert opined at trial that the shell casing found at the scene was ejected from that gun, and although the forensic testing was inconclusive, the gun could have fired the bullet found in Smith's body." *Ingram I*, 2013 WL 6283644, at *2; (*see also* ECF No. 11–41 pp. 109, 110.)

The trial court instructed the jury that "unless each and every essential element of each charge is proved to you beyond a reasonable doubt, [petitioner] must be found not guilty of that particular charge.  The burden of proving

14

those elements of each charge beyond a reasonable doubt … rests upon the State and that burden never shifts to [petitioner]."   (ECF No. 11–45 p. 106.) "In order for you to find the defendant guilty of aggravated manslaughter, the State is required to prove the following elements beyond a reasonable doubt: one, that defendant caused Mr. Smith's death and, two, that the defendant did so recklessly and, three, that the defendant did so under circumstances manifesting extreme indifference to human life."   (*Id.* p. 136.)   The jury was told that it "should consider [the expert's] opinion and give the weight to it that you think it's entitled, whether that be great or slight, or you may reject it. … It's always within the special function of the you the jury to determine whether the facts on which the answer or testimony of an expert is actually exists [sic]." (*Id.* p. 127.)

Having reviewed the state court record, I find there was sufficient evidence for a reasonable jury to convict petitioner of aggravated manslaughter.   As the Appellate Division noted, "[m]ultiple eyewitnesses saw defendant shoot Smith, and the shell casing found at the scene was connected to the gun found on defendant.   *Ingram I*, 2013 WL 6283644, at *7.   Petitioner is not entitled to habeas relief on this claim.

E.    **Ineffective Assistance of Counsel— Failing to Object to Videotape in the Jury Room**

Ground Five is the first of petitioner's ineffective assistance of counsel claims.   (ECF No. 1 p. 42.)   To succeed on his ineffective assistance claims, petitioner must first "show that counsel's representation fell below an objective standard of reasonableness."   *Strickland v. Washington*, 466 U.S. 668, 688 (1984).   He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.   *Strickland* also applies to petitioner's ineffective

assistance of appellate counsel claims. For these claims, petitioner must show "that there is a 'reasonable probability'—'a probability sufficient to undermine confidence in the outcome,' but less than a preponderance of the evidence—that his appeal would have prevailed had counsel's performance satisfied constitutional requirements." *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 694–95).

In Ground Five, petitioner argues that trial counsel "failed to properly request that the re-play of [his] videotaped statement be done in open court as opposed to being done in the jury room." (ECF No. 1 p. 42.) The PCR court concluded that petitioner was procedurally barred from raising this claim "because the issue of whether [petitioner] was deprived of his right to be present at a critical stage of the trial proceedings … was already expressly adjudicated on appeal." (ECF No. 11–17 p. 163 (citing N.J. Ct. R. 3:22-5).) It further concluded that petitioner had not satisfied the prejudice prong of *Strickland*. (*Id.* p. 164.) Petitioner did not exhaust Ground Five as it was not presented to the Appellate Division or the New Jersey Supreme Court, but I will exercise my discretion to deny it on the merits after a *de novo* review. 28 U.S.C. § 2254(b)(2).

"Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 689). I must be "highly deferential" to trial counsel's decisions and should not "second-guess

counsel's assistance after conviction." *Strickland*, 466 U.S. at 689; *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996).

I have already determined that petitioner's constitutional rights were not violated by allowing the jury to review his videotaped statement in the jury room in my review of Ground One.   Therefore, it was not error for trial counsel to acquiesce to the playing of the statement in the jury room because counsel cannot be ineffective for declining to raise a meritless issue.   *See Premo v. Moore*, 562 U.S. 115, 124 (2011).   Moreover, a review of the record supports a conclusion that allowing the jury to view the statement as part of its deliberations was a calculated move by trial counsel.

The PCR court agreed with the Appellate Division's conclusion that "[d]efense counsel considered [petitioner's] video-recorded statement as a crucial element of the defense strategy that [petitioner] did not shoot Smith and had left the scene before the shooting occurred."   (ECF No. 11–17 p. 164.) "Here, the Appellate Division expressly found that the decision to not object to the statement's admission and the use of the statement during summation was a matter of trial strategy."   (*Id.*)   "[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage."   *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (internal citation omitted).   Trial counsel argued that the police developed tunnel vision in focusing on petitioner's guilt and failed to thoroughly investigate Smith's death.   In support of this theory, counsel relied on the recorded interview as well as the absence of fingerprint or DNA evidence linking petitioner to the crime.   (ECF No. 11–45 p. 44.)   "[T]he police already had their theory of the case. … [T]hey were basically not doing this as an investigation.   There were doing this as essentially, 'Let's try to close the case.'"   (*Id.*)   Trial counsel asserted petitioner's consistency during his

interview contrasted with the other witnesses' interviews because they "[gave] the police basically what they wanted to hear because that was [the police's] theory from day one. [The police] didn't bother to investigate anything else." (*Id.* p. 45.) "That the jury did not believe [p]etitioner's defense after considering all the evidence in the case does not mean [trial counsel] was constitutionally inadequate under *Strickland*." *Evdokimow v. United States*, No. 19–cv–14130, 2022 WL 214544, at *21 (D.N.J. Jan. 25, 2022).

I therefore conclude that petitioner has not satisfied his burden in showing that trial counsel's decisions amounted to incompetence under prevailing professional norms. I need not consider *Strickland*'s prejudice prong "[b]ecause failure to satisfy either prong defeats an ineffective assistance claim … ." *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002). Petitioner is not entitled to habeas relief on Ground Five.

> ### F.  Ineffective Assistance of Counsel— Failure to Redact Statement and Request a Jury Instruction

In Grounds Six[5] and Nine, petitioner argues that trial counsel was ineffective for not redacting his statement "to remove references to [petitioner's] prior crimes and incarceration … ." (ECF No. 1 p. 45; ECF No. 1–1 p. 3.) He also asserts that trial counsel should have requested a limiting instruction. (ECF No. 1 p. 46.) I review these claims pursuant to § 2254(d) as petitioner exhausted these arguments. Here, the "pivotal question" in a *Strickland* claim "is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "When § 2254(d) applies, the question is not whether counsel's

---

[5] Ground Six includes other ineffective assistance of counsel claims which I shall discuss *infra*.

actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105. My review is thus "doubly deferential[.]" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

Petitioner argues that his "statement contained numerous references to [his] prior crimes and incarceration." (ECF No. 1 p. 45.) "In addition to [petitioner's] prison term, referenced numerous times throughout trial, jurors learned that [petitioner] had previously sold marijuana." (*Id.*) The PCR court rejected these arguments on collateral review, and the Appellate Division adopted its reasoning. *Ingram II*, 2016 WL 6575220, at *4. The PCR court noted that "[t]his is not an instance in which trial counsel sat idly by in regards to redactions. Here, trial counsel sought various redactions to the statement, many of which were made." (ECF No. 11–17 p. 164.) "Indeed, trial counsel sought various redactions, many of which were granted, and a total of two full hours of petitioner's originally five-hour interview was eventually redacted from the version played for the jury." (ECF No. 11 p. 57.) The PCR court further noted that "there were numerous pieces of evidence that pointed to the petitioner's guilt such as *multiple* eyewitness accounts and a *match* between the shell casing recovered at the scene of the crime and the weapon recovered from petitioner upon his arrest." (ECF No. 11–17 p. 164 (emphasis in original).)[6] It concluded that petitioner had not established a reasonable probability that the result of trial would have been different when the objectionable language was "weigh[ed] against the slight potential reference to two or three pieces of … evidence amidst a lengthy trial … ." (*Id.* pp. 164, 165.)

---

[6] The forensic testing was inconclusive according to the Appellate Division, *Ingram I*, 2013 WL 6283644, at *2, but the PCR court's decision is still reasonable based on the state court record.

I find that this is a reasonable application of *Strickland*.[7]  Trial counsel participated in reviewing the statement before it was allowed into the jury room, and the two brief mentions of alleged gang membership concerned third parties, not petitioner, and petitioner adamantly denied knowing anything about the alleged "general."   (ECF No. 11–18 p. 124.)[8]   When a juror asked for clarification regarding a statement about petitioner "getting out" of somewhere, the parties agreed that "[Detective] Alimenti was talking about getting out of the hospital."   (ECF No. 11–44 p.17.)   The trial court immediately instructed the jury that "someone raised a question that there may have been something on that tape about the [petitioner] getting out of somewhere, … the question was about [petitioner] getting out of the hospital … ."   (*Id.*)   The state court's factual determinations are presumed to be correct unless the petitioner rebuts that presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).  Petitioner has not submitted any evidence to the contrary, so he has not shown that the brief remarks "so conspicuously outweigh[ed]" the statement's probative value.   *Bronshtein v. Horn*, 404 F.3d 700, 730 (3d Cir. 2005).

The PCR court also reasonably concluded that trial counsel was not ineffective for failing to request a jury instruction regarding the alleged bad act evidence.   (ECF No. 11–17 p. 164.)   "A habeas claim will lie only where the jury instruction is so prejudicial as to amount to a violation of due process and fundamental fairness."   *Freeman v. Davis*, No. 18–cv–08269, 2021 WL 4705009, at *8 (D.N.J. Oct. 7, 2021) (quotations omitted).   "[A] habeas petitioner must demonstrate both (1) that the instruction contained some

---

[7] I will consider the redacted transcript for this claim because it was considered by the state courts in petitioner's collateral review proceedings.   (ECF No. 11–18 p. 40.)

[8] The transcript reflects that petitioner told the officers that "Miz" was "a trip." (ECF No. 11–18 p. 61.)   Petitioner asserts that he said "Crip," as in a member of the street gang.   (ECF No. 1–1 p. 4.)

ambiguity, inconsistency, or deficiency, and (2) that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) (quotations and citations omitted). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Petitioner indicates that the instruction should have "explain[ed] precisely the prohibited and permitted purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction in which it [sic] is required to adhere." (ECF No. 1 p. 55.) He does not elaborate further. I cannot speculate what specific language would have met this criteria and would have been acceptable as a jury instruction. "Therefore, [petitioner] has not met the higher standard necessary to show a due process violation from a missing instruction." *Johnson v. Att'y Gen.*, No. 19–cv–00403, 2025 WL 1367448, at *8 (D.N.J. May 12, 2025); *see also Henderson*, 431 U.S. at 155 ("Because respondent did not submit a draft instruction on the causation issue to the trial judge ... we cannot know with certainty precisely what instruction should have been given ....") Accordingly, the PCR court reasonably applied *Strickland* and denied relief on this argument.

### G. Ineffective Assistance of Counsel—Failure to Obtain a Ballistics Expert

Petitioner also argues in Ground Six that trial counsel was ineffective for failing to obtain a ballistics expert. (ECF No. 1 p. 47.) The PCR court denied this claim, (ECF No. 11–17 p.165), but petitioner did not raise it on appeal, (ECF No. 11 p. 56.) I exercise my discretion to deny the claim on its merits after a *de novo* review. 28 U.S.C. § 2254(b)(2).

Petitioner states that trial counsel should have retained a ballistics expert to counter the State's expert witness. "Trial Counsel's decision not to investigate so he could prove that the weapon, which was found to be inconclusive when tested by the State's forensic expert and presented at trial, was not, in fact, the murder weapon, is not a strategy." (ECF No. 1 p. 48). "When a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced." *United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011). Petitioner has not submitted any sworn statement from a ballistics expert indicating that the expert would have testified in a manner contradicting the State's expert. "[T]he failure to provide such a sworn statement prevents [p]etitioner from being able to show any prejudice as a result of counsel's failure" to call such an expert. *Judge v. United States*, 119 F. Supp. 3d 270, 285 (D.N.J. 2015). Therefore, petitioner is not entitled to habeas relief on this claim.

## H.   Ineffective Assistance of Counsel— Failure to Request a *Wade* Hearing

Petitioner asserts trial counsel should have requested a *Wade* hearing challenging the witnesses' in-court identification. (ECF No. 1 p. 48.) "If pre-trial counsel would have requested a full *Wade* hearing challenging the in-court identification of said State's witnesses … it would have saved the Court's time at trial of the State's witnesses recanting at Trial … ." (*Id.* pp. 48, 49.) The PCR court denied this claim, (ECF No. 11–17 p. 166), but petitioner did not raise it on appeal, (ECF No. 11 p. 56.) I exercise my discretion to deny the claim on its merits after a *de novo* review. 28 U.S.C. § 2254(b)(2).

"The purpose of a *Wade* hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive." *Herrill v. Ricci*, No. 10–

cv–03575, 2016 WL 1183176, at *18 (D.N.J. Mar. 28, 2016) (citing *United States v. Wade*, 388 U.S. 218, 242 (1967)).   "The hearing is made outside the presence of a jury, and concerns not the in-court identification, but only the pre-trial identification." *United States v. Stevens*, 935 F.2d 1380, 1386 n. 3 (3d Cir. 1991) (citation omitted).   Petitioner is challenging the in-court identifications by the witnesses; therefore, *Wade* does not apply to his case.   Trial counsel cannot be ineffective for failing to request a hearing to which petitioner was not entitled.   *See Avila v. Att'y Gen. of New Jersey*, No. 18–cv–09422, 2023 WL 8253437, at *8 (D.N.J. Nov. 29, 2023) (noting "trial counsel was not ineffective for failing to request a *Wade* hearing because [p]etitioner was not entitled to a *Wade* hearing").

Moreover, the trial court conducted a pre-trial *Wade* hearing on the admissibility of the out-of-court identifications made by Denzel Davenport and Felicia Javier.  (ECF No. 11–36.)   The trial court found that petitioner had not shown that the identifications were unduly suggestive.  (*Id.* pp. 41, 42.) Petitioner has not presented any evidence demonstrating a reasonable probability that conducting additional hearings would have changed the outcome of the trial.   I find that petitioner has not satisfied his burden under *Strickland* and is not entitled to habeas relief.

I.    **Ineffective   Assistance   of   Counsel— Failing   to   Object   to   the   Trial   Court Holding Felicia Javier in Contempt**

Petitioner asserts in his final sub-claim of Ground Six that trial counsel should have objected to the trial court calling Felicia Javier a "liar" when she claimed not to remember the incident.   (ECF No. 1 p. 49.)   The PCR court denied this claim, (ECF No. 11–17 p. 166), but petitioner did not raise it on appeal, (ECF No. 11 p. 56.)   I exercise my discretion to deny the claim on its merits after a *de novo* review.   28 U.S.C. § 2254(b)(2).

"At the beginning of the first day of testimony, before any witnesses had been heard, the State advised the trial judge that the State's witness Felicia Javier indicated that she had no memory of the incident." (ECF No. 11 p. 66.) The prosecutor questioned Javier before the jury was brought in, and she testified that she did not remember giving a sworn statement to police the day of the shooting, allegedly because she had had thirteen seizures since the incident and was taking "2000 milligrams of Keppra for seizures." (ECF No. 11–40 p. 6.) The trial court told Javier "if I find as a matter of my discretion to find, that you're feigning memory loss, or that you're not testifying, I will hold you in contempt, and you'll be incarcerated, just so you understand how this works … ." (*Id.* pp. 6, 7.) Javier's statement was played, and she continued to assert that her medical condition was the cause of her memory loss and that her physician could testify to her condition. (*Id.* p. 7.) The trial court concluded that she was feigning her memory loss and held her in contempt until such time that her physician could testify. (*Id.* pp. 7, 8.) The jury was not brought in until after the trial court issued its ruling. (*Id.* p. 19.)

After Javier testified in front of the jury, the trial court instructed that the jury was not to "draw any inference for or against [petitioner] for the witness's refusal or memory loss, whatever it may be … ." (*Id.* p. 34.) "[J]uries are presumed to follow their instructions ...." *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

The jury did not learn that Javier had been held in contempt or that the trial court believed she was feigning her memory loss, so I conclude that there is not a reasonable probability that the result at trial would have been different had trial counsel objected to the contempt ruling. Petitioner is not entitled to habeas relief.

24

J.    **Ineffective    Assistance    of    Appellate
      Counsel**

In Grounds Seven and Ten, petitioner asserts that his appellate counsel was ineffective for failing to argue on appeal that the jury had been prejudiced by the introduction of alleged other-crimes evidence from petitioner's police interview and references made by two of the State's witnesses to his prior incarceration.    (ECF No. 1 p. 50; ECF No. 1–1 p. 6.)    Petitioner exhausted this argument on collateral review.[9]

The state courts concluded on collateral review that it was "objectively reasonable for appellate counsel to not appeal at most four instances of prior bad acts as compared with the overwhelming proofs of petitioner's guilt at trial." (ECF No. 11–17 p. 167.)    This was a reasonable application of *Strickland*. "[C]ounsel need not, and should not, raise every non-frivolous claim but rather may select among them in order to maximize the likelihood of success on appeal." *Showers v. Beard*, 635 F.3d 625, 634 (3d Cir. 2011).    "Indeed, an appellate lawyer's exercise of professional judgment in omitting weaker claims is obviously of benefit to the client: the more claims an appellate brief contains, the more difficult for an appellate judge to avoid suspecting that there is no merit to any of them."    *Johnson v. Tennis*, 549 F.3d 296, 302 (3d Cir. 2008) (internal citation and quotation marks omitted).    I have already concluded that there was no constitutional error in providing petitioner's statement to the jury during its deliberations and that trial counsel was not ineffective for failing

---

[9] Arguably, appellate counsel did make this argument on appeal.    (ECF No. 11–7 p. 25.)    As part of the broader argument that the statement should not have been played for the jury, appellate counsel contended that "the cumulative weight of the improper prior-crimes evidence combined with the fact that the jury was allowed to take the video of the police interview into the jury room for deliberations undid whatever ameliorative effect the court's instructions may have had."    (*Id.* p. 27.)    The Appellate Division rejected this argument on direct appeal.    *Ingram I*, 2013 WL 6283644, at *2.    However, I must defer to the state courts' apparent conclusions that this argument was not presented for direct review.

to request further redactions to the statement.    It logically follows from there that it was a reasonable, strategic decision to not raise this claim on direct review.    Therefore, the state courts reasonably applied *Strickland*, and petitioner is not entitled to habeas relief on this claim.

## K.  Ineffective Assistance of Counsel—Confrontation Clause

In Ground Eight, petitioner argues that his trial counsel was ineffective for failing to object to the introduction of Javier's statement to police because he could not "confront witness on witness statement that was used because of memory loss" in violation of petitioner's Confrontation Clause rights.    (ECF No. 1–1 p. 2.)    The PCR court denied this claim, (ECF No. 11–17 pp. 167, 168), but petitioner did not raise it on appeal, (ECF No. 11 p. 56.)    I exercise my discretion to deny the claim on its merits after a *de novo* review.    28 U.S.C. § 2254(b)(2).

"Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."    *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).    "[I]f a witness's belief is introduced into evidence, either through live testimony or admission of an out-of-court statement, and the witness then responds willingly to questions on cross-examination but is unable to recall the basis for the introduced belief, the defendant's right to cross-examination has not been violated."    *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 381 n. 17 (3d Cir. 2018). However, it violates the Confrontation Clause to admit a testimonial, out-of-court statement when a witness refuses to participate in cross-examination. *Id.* at 380–81 (finding admission of out-of-court statement violated the Confrontation Clause when witness pleaded the Fifth Amendment and "responded 'no comment' to nearly every question defense counsel asked him.")

Here, trial counsel cross-examined Javier about her statement after it played for the jury. (ECF No. 11–40 pp. 32, 33.) Unlike the witness in *Preston*, Javier did not categorically refuse to participate. She answered a few questions, for example stating that the get-together was "never a party" and "people just came," (*id.* p. 32), but asserted that she was unable to remember most details about the incident or her statement. (*Id.* pp. 32, 33.) Furthermore, Javier cast doubt on the credibility of her statement to police by testifying that she was "drunk and high" at the time of her statement. (*Id.* p. 33.) Under these circumstances, petitioner was given a full and fair opportunity to conduct effective cross-examination, even if the cross-examination ultimately was not as effective as he would have liked due to Javier's forgetfulness. *See Preston*, 902 F.3d at 381 n. 17. Since the admission of Javier's statement did not violate the Confrontation Clause, trial counsel was not ineffective for objecting to its admission. *Id.* at 379. Petitioner is not entitled to habeas relief on Ground Eight.

## L.   **Ineffective Assistance of Counsel— "Corroborating with Prosecution"**

In addition to the argument petitioner made in Ground Ten that appellate counsel failed to challenge the admission of bad acts,[10] he also alleges that trial counsel "corroborated" with the prosecutor to "tell a falsehood to correct an evidentiary error" when he agreed to tell the jury that petitioner was referring to getting home from the hospital in his statement. (ECF No. 1–1 pp. 8, 9.) This argument was exhausted on collateral review. (ECF No. 11 p. 91.)

During cross-examination, Sergeant Sample mentioned that a witness informed him that petitioner had been "recently released from Northern State

---

[10] Ground Nine, which argues that trial counsel was ineffective for failing to request further redaction of petitioner's statement and for failing to request a limiting instruction, was discussed *supra* with Ground Six.

Prison." (ECF No. 11–44 p. 12.) Trial counsel immediately objected, and the trial court instructed the jury to disregard the answer because it "was not responsive to the question, made some kind of a reference to a prison which is irrelevant to the case; it is not appropriate to the case." (*Id.* p. 13.) Juror Seven then indicated that she heard a reference on the tape to petitioner previously being in prison. (*Id.* p. 15.) Once Juror Seven returned to the jury box, the parties agreed that "[Detective] Alimenti was talking about getting out of the hospital." (*Id.* p. 17.) The trial court immediately informed the jury that

> someone brought to my attention that on the tape of the defendant that we saw, someone raised a question that there may have been something on that tape about the defendant getting out of somewhere, … and the question was about the defendant getting out of the hospital, all right, it was about something when he had just got out of the hospital, all right, it was about something when he had just got out or something, so you shouldn't confuse that with any type of getting out of anywhere but a hospital, and the lawyers both agree that, that is what is on the tape … .

(*Id.* p. 17.) The PCR court concluded that "petitioner has not supplied any information to indicate that this [was] factually inaccurate" or "*any* evidence, either by way of affidavit or certification, that trial counsel did in fact collude with the prosecutor to commit a fraud upon the tribunal." (ECF No. 11–17 pp. 165, 166 (emphasis in original).)

This was a reasonable application of *Strickland*. Petitioner has the burden of proof under § 2254, *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), and he "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations … ." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991); *see also Villanueva v. Rozum*, No. 06–cv–05564, 2008

WL 268060, at *12 (E.D. Pa. Jan. 28, 2008) ("It is certainly reasonable to conclude that an ineffective assistance claim lacks merit when it lacks factual support.")  Petitioner is not entitled to habeas relief on this claim.

M.  **Ineffective   Assistance   of   Counsel—
Failure to Advise of Plea Agreement**

In Ground Eleven, petitioner asserts PCR counsel was ineffective for failing to argue that trial counsel failed to advise him of a plea agreement for a 24-year sentence.  (ECF No. 1–1 p.15.)  However, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).  I will summarily dismiss Ground Eleven to the extent it brings an ineffective assistance of PCR counsel claim.

Petitioner has procedurally defaulted on any claim of trial counsel's ineffectiveness for failing to advise him of a plea offer.  Petitioner raised Ground Eleven for the first time in his second PCR petition.  (ECF No. 11–28 p. 2.)  The PCR court denied the second petition without an evidentiary hearing, and the Appellate Division concluded the second petition was barred by New Jersey law.  (*Id.* pp. 3, 4 (citing N.J. Ct. R. 3:22-12(a)(2)).)  The procedural default doctrine provides that "federal courts generally decline to hear any federal claim that was not presented to the state courts 'consistent with [the State's] own procedural rules.'"  *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (alteration in original) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).  It "prohibits federal courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment."  *Fahy v. Horn*, 516 F.3d 169, 187 (3d Cir. 2008).  "The procedural rule in this case, [N.J. Ct. R.] 3:22-12, speaks in unmistakable terms requiring any challenge to a sentence to be filed within five years of the sentencing

proceeding." *Johnson v. Pinchak*, 392 F.3d 551, 559 (3d Cir. 2004). "New Jersey courts have generally applied the time bar set forth in [N.J. Ct. R.] 3:22-12 so that this rule can fairly be said to have been firmly established and regularly followed." *Id.* at 561.

"Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). To determine whether *Martinez* excuses petitioner's procedural default, I must first "decide whether an underlying ineffectiveness claim succeeds considering only the state court record. If not, federal courts should deny relief without more." *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723–24 (3d Cir. 2022) (citing *Shinn*, 596 U.S. at 390).

I find that petitioner's underlying ineffectiveness claim cannot succeed for the reasons identified by the Appellate Division in its February 13, 2019 order denying petitioner's second PCR petition:

> The record discloses that the pretrial memorandum prepared in this case: (1) advised [petitioner] that his maximum exposure on the charges was life imprisonment, with over sixty-six years of parole ineligibility; (2) set forth the State's final plea offer which required [petitioner] to plead guilty to aggravated manslaughter in exchange for the State agreeing to recommend that he receive a twenty-four year sentence, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43–7.2; and (3) contained [petitioner's] acknowledgement that he was knowingly rejecting the plea offer.

(ECF No. 11–28 p. 3 n. 2.) "This offer and defendant's exposure was also put on the record at a pretrial hearing" (*Id.*; *see also* ECF No. 11–38 p. 5.) I find that the state court record thoroughly refutes petitioner's claim that he was unaware of the 24-year offer. Therefore, *Martinez* does not excuse the

procedural default. *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723–24 (3d Cir. 2022).   Ground Eleven is dismissed as procedurally defaulted.

### N.   Ineffective Assistance of PCR Appellate Counsel

In Ground Twelve, petitioner asserts PCR appellate counsel was ineffective for failing to "advance petitioner's claim of Trial Counsel being ineffective for not advising petitioner of 24 year plea agreement offered by the State."   (ECF No. 1–1 p. 18.)

As I noted in my discussion of Ground Eleven, alleged errors of collateral review counsel are not available grounds for relief in § 2254 proceedings.   I have also already concluded that the underlying ineffectiveness of trial counsel is without merit for the reasons identified by the Appellate Division. Therefore, Ground Twelve is denied in its entirety.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   Because petitioner's habeas claims are all without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further.   I will deny petitioner a certificate of appealability.

**V.    CONCLUSION**

For the reasons stated above, I will dismiss in part and deny in part the Petition.   An appropriate Order accompanies this Opinion.

_/s/ Edward S. Kiel_____
**EDWARD S. KIEL**
UNITED STATES DISTRICT JUDGE

Dated: June 24, 2025